McKinney, J.,
delivered the opinion of the court.'
The plaintiff in error was indicted and convicted in the circuit court of Blount, for the utterance of certain grossly obscene words, in public, and in the hearing of divers persons, in the town of Louisville in said county. The different words alleged to have been spoken, are set forth in three different counts. This was necessary to the validity of the indictment, *43 but we omit to repeat them here; because of their extremely vulgar and offensive character. It is sufficient to state, that they relate to acts of criminal intercourse alleged by the defendant to have taken place between him and the daughters of Abraham Hartsell, and to a loathsome disease, said by the defendant to have been contracted by him from the wife of Hiram Hartsell.
Two questions are presented for our determination : First, is the utterance of obscene words, in public, an indictable of-fence ? And if so, secondly, are the words proved sufficient to support the charges in the indictment ?
Upon the first point, the argument for the plaintiff in error rests upon the narrow and unsubstantial ground, that no precedent, or adjudication, has been found in support of such an indictment. Admitting this to be true, for the present, what does it establish ?
If the case stated in the indictment falls within the operation of clear, well defined, and well established principles' of law, is it to be urged against the maintenance-of this prosecution, that no similar case has heretofore occurred calling for the like application of such principles ? Surely not, at this day. Are not innumerable instances to be found in the modern Reports, both of England and America, in which the libera], enlightened, and expansive principles of the common law have been adapted and applied to new cases, for which no precedents were to be found, so as to meet the ever varying condition and emergencies of society ? And this must continue to be so, unless a stop be put to all further progress of society; and unless a stop be also put to the further workings of depraved human nature, in seeking out new inventions to evade the law.
What then are the well established principles of the common law, applicable to the present case ?
The distinguished commentator on the laws of England *44 informs us, that upon the foundations of the law of nature and the law of revelation, all human laws depend, 1 Bl. Com. 42. The municipal law looks to something more than merely the protection of the lives, the liberty, and the property of the people. Regarding Christianity as part of the law of the land, it respects and protects its institutions; and assumes likewise to regulate the public morals and decency of the community. The same enlightened author (1 Vol. Com. 124,) distinguishes between the absolute and relative duties of individuals, as members of society. He shows very clearly, that, while human laws cannot be expected to enforce the former, their proper concern is with social and relative duties. Municipal law being intended only to regulalte the conduct of men, considered under various relations, as members of civil society; hence he lays it down, that however abandoned in his principles, or vicious in his practice, a man may be, provided he keeps his wickedness to himself, and does not offend against the rules of public decency, he is out of the reach of human laws. But, says the learned writer, if he make his vices public, though they be such as seem principally to affect himself — as drunkenness, or the like — they then become, by the bad example they set, of pernicious effect to society ; and, therefore, it is then the business of human laws to correct; them. See also 4 Bl. Com. 41, 42.
It is certainly true, that in England many offences against good morals and public decency, if committed in private, belong properly and exclusively to the ecclesiastical courts. But it is equally true, that whenever they become public, so as thereby to become of pernicious example, or offensive to public morals and decency, they fall within the proper jurisdiction of the temporal courts.
In the case of The King vs. Delard et als, (3 Burr. R. 1438,) which was an information for conspiracy,- for putting a young *45 girl into the hands of a man of rank and fortune, for the purpose of prostitution — Lord Mansfield laid it down, that, except as to those cases appropriated to the ecclesiastical court, the court of King’s Bench is the custos morum, or .guardian of the morals of the people, and has the superintendency of offences contra bonos mores ; and upon this ground, he says, both Sedley and Curl, who had been guilty of offences against good manners, were prosecuted in that court.
In 1 Russell on Crimes, (270, at top,) it is said that, “In general, all open lewdness, grossly scandalous, is punishable by indictment at the common law ;” and, says the author, “ it appears to be an established principle, that whatever openly outrages decency, and is injurious to public morals, is a misdemeanor.” So Blackstone lays it down, (4 Com. 64,) that any grossly scandalous and public indecency, is indictable, and punishable in the temporal courts by fine and imprisonment.
These principles have been fully recognized by this court. In the case of Grisham and Ligon vs. The State, (2 Yerger,) that thorough common lawyer, the late Judge Whyte, declared that “ The common law is the guardian of the morals of the people, and their protection against offences notoriously against public decency and good morals.” And he adds, in another part of the same opinion, “ we have the express authority of the common law, as declared by the Judges in the courts of justice, that all offences against good morals are cognizable and punishable in the temporal courts, that are not particularly assigned to the spiritual court.”
The books of Reports, both of England and this country, abound with cases where, upon these principles of the com: mon law, convictions have been enforced for various offences against public morality and decency, without the aid of any statutory enactment. And surely it can be no reason for the relaxation of these salutary principles, but rather the con *46 trary, that in this country, we have no “ spiritual court,” to lend its aid in the suppression of the numerous offences falling within the class now under consideration ; and that such of them as cannot be reached in the mode pursued in the case before us, must “go unwhipt of justice.”
It would be tedious to enumerate the cases in which offen-ces have been held indictable, as contra bonos mores — & few will suffice for the present purpose. Public drunkenness, 4 Bl. Com. 41. All indecent exposure of one’s person to the public view, Id. 65, n. 25. In the case of The King vs. Crunden, 2 Campb. 89, (1 Russ, on Crimes, 302,) it was held an indictable offence to bathe in the sea near inhabited houses, from which the person might be seen; although the houses had been recently erected, and previously thereto, it had been -used for persons, in great numbers, to bathe at such place. And it was so held, for the reason, “ that whatever place be- . comes the habitation of civilized men, there the laws of decency must be enforced.”
So it has been held by this court, that if the master of a slave, in his employ, permit such slave to pass about, in view of the public, so meanly clad, as not to protect the person of such slave from indecent exposure, the master is indictable for lewdness, or scandalous public indecency: 3 Humph. R., 203. And it may be laid down, in general terms, that all such acts and conduct as are of a nature to corrupt the public morals, or .to outrage the sense of public decency, are indictable, whether committed by words or acts.
These adjudications, without citing others, we think furnish analogies sufficiently strong to sustain the present prosecution. Are the outrageously vulgar and obscene words found in this record, if uttered in the ear of the public, less likely to shock any one’s sense of decency, .and to corrupt the morals of society — not to speak of their inevitable tendency to provoke violence and bloodshed — than the offences *47 charged in the several adjudicated cases above cited ? It does not so appear to us. But, were there no analogy to be drawn from any decided case, we hold, that, upon the broad principles of the common law which we have stated, this prosecution is most amply sustained. Thus fortified by sound principles — principles which lie at the foundation of every well regulated community — (and resting on a basis so immutable,) we are the more indifferent as to precedents exactly in point.
Secondly. It is argued, that the words charged to have been uttered, being the gist of the offence, they must be set forth with the same particularity as in an indictment for libel; or for contemptuous words spoken to á magistrate in the execution of his office; or for seditious words ; and that at least the substance of the words, as set forth in the indictment, must be proved. Hence, it is insisted, that a charge importing that certain acts had been done by the defendant, as stated by him, will not be supported by proof that he said he would have done the acts, if opportunity had been afforded. The present case, it may be remarked, is distinguishable from either of the cases cited. The gist of the offence here, is not a specific libel upon a private individual; nor is it a specific contempt to a public functionary; neither is it for a seditious or treasonable act towards the government; in all which cases, the principle relied upon unquestionably applies. The gist of this offence is the gross violation of good morals and public decency : for which, according to the-argument, there is no precedent to be found; and if required, for the first time, to make one, as we hesitate not to do, we must be guided by principles sensible and practicable in themselves. If the criminality of the defendant’s conduct depends alone upon the flagrant outrage to public decency, by the utterance of shamelessly obscene language in reference to certairi acts, can it, in reason, be of any conse *48 quence whether such language imported that he had done, or would do, the specific acts ? In either case the offence,, so far as public decency is concerned, is identically the same. To hold that the words must be laid exactly as spoken, or that they must be proved as laid, would, perhaps, in most cases, insure impunity to the offender; because almost every one, not abandoned to all sense of decency, would instinctively turn away his ear from hearing such revolting indecency.
But it is needless to pursue this unpleasant discussion farther, as upon the third count the conviction may be well rested; and between the words in that count, as laid and proved, there is no variance.
Let the judgment be affirmed.